IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE HENRY, | : | |
| *Petitioner* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHELE FERRELL, *et al.*, | : | |
| *Respondents* | : | No. 21-1322 |

## MEMORANDUM

PRATTER, J.                                                                                                  APRIL 12, 2022

Dwayne Henry petitions this Court for a writ of habeas corpus challenging his custody in the Philadelphia Industrial Correctional Center. Mr. Henry has not, however, properly exhausted the state remedies available to him. Moreover, even if he had properly exhausted state remedies, his petition is without merit. The Court, therefore, adopts the Magistrate Judge's Report and Recommendation and denies Mr. Henry's habeas petition.

### BACKGROUND

Mr. Henry was arrested in 2004 and, after a jury trial in 2006, found guilty of robbery, possession of an instrument of crime, and criminal conspiracy. Dkt. No. CP-51-CR-805831-2004, at 5–6, 9. He was sentenced in 2007 to seven and one-half years to fifteen years of imprisonment, followed by five years of probation. *Id.* at 5. In October 2019, after he was released from prison but while he remained on probation, Mr. Henry was arrested for assault and recklessly endangering another person. Dkt. No. CP-51-CR-1023-2020, at 3; Dkt. No. CP-51-CR-805831-2004, at 22.

On October 16, 2019, a detainer order issued against Mr. Henry for his potential parole violation. Dkt. No. CP-51-CR-805831-2004, at 22. He was being held at the Philadelphia Industrial Correctional Center (PICC). Mr. Henry moved to lift the detainer order on multiple

1

occasions. *See id.* at 22–24. His most recent motion to remove the detainer was filed on March 1, 2022 and denied a week later. *Id* at 23.

On March 7, 2021,[1] Mr. Henry filed a habeas petition *pro se* in federal court, alleging that his incarceration for his probation violation during the COVID-19 global pandemic violates both the Eighth Amendment of the United States Constitution and Article I of the Pennsylvania Constitution.[2] Doc. No. 2, at 9.

This Court referred Mr. Henry's petition to the Honorable Timothy R. Rice, United States Magistrate Judge, for a Report and Recommendation. Judge Rice submitted his R&R, recommending that Mr. Henry's petition be denied as both unexhausted and meritless. Mr. Henry objected, arguing both that his claim was properly exhausted and that his claim had merit.

## LEGAL STANDARD

Federal courts can hear habeas petitions from state prisoners, but only in limited circumstances. The prisoner must first have "exhausted the remedies available in" state court, usually through a direct appeal and then a post-conviction petition. 28 U.S.C. § 2254(b)(1)(A). A petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c). The only exceptions to this exhaustion requirement are where "it appears that . . . there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." *Id.* § 2254(b)(1)(B).

---

[1] According to Mr. Henry's *pro se* petition, it was filed on March 7, 2021. Doc. No. 2, at 1, 15. Pursuant to the prison mailbox rule, a *pro se* prisoner's habeas petition is deemed filed when he delivers it to prison officials for filing with the court. *Houston v. Lack*, 487 U.S. 266, 276 (1988). The Court assumes that Mr. Henry delivered his petition to prison officials for filing on March 7, 2021, and deems his petition filed on that date.

[2] The Court does not have the power to consider whether Mr. Henry is in custody in violation of the Pennsylvania Constitution. This Court's jurisdiction is limited to considering whether his custody "is in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

If a party timely objects to a magistrate judge's report and recommendation, the court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Regardless of whether timely objections are made, district courts *may* accept, reject, or modify—in whole or in part—the magistrate judge's findings or recommendations. *Id.*

## DISCUSSION

Mr. Henry petitions this Court for a writ of habeas corpus. He claims that his custody at the PICC violates the Eighth Amendment to the United States Constitution because the COVID-19 pandemic poses a substantial risk of serious harm to his health, meaning he is being subjected to "cruel and unusual punishment." U.S. Const. amend. VIII.

At the outset, the Court is not entirely clear as to the present status of Mr. Henry's incarceration. At the time of Mr. Henry's petition to this Court in March 2021, his most recent motion to remove the detainer order for the probation violation in his 2004 criminal case had been denied. Dkt. No CP-51-CR-805831-2004, at 23. In his pending criminal case for the 2019 charges, it appears that Mr. Henry has been released and placed on pretrial electronic monitoring. Dkt. No. CP-51-CR-1023-2020, at 8. Nevertheless, Philadelphia's incarcerated person locator states that Mr. Henry remains incarcerated, though he is apparently now at the Curran-Fromhold Correctional Facility rather than the Philadelphia Industrial Correctional Center. As Mr. Henry's state proceedings presently stand, however, they do not alter the procedural posture of his federal habeas petition.

Magistrate Judge Rice recommended denying Mr. Henry's petition both because he has not exhausted the state remedies available to him and because his petition is without merit. This Court agrees.

I. **Mr. Henry Has Not Exhausted All Available State Remedies**

Judge Rice first recommended denying Mr. Henry's petition because he has not yet exhausted all available state remedies. Mr. Henry objected to this portion of Judge Rice's R&R, arguing that he cannot appeal the Pennsylvania Parole Board's detainer order. While Mr. Henry is right that he cannot further appeal the detainer order, that does not mean he has no other available remedies in state courts.

To begin, Mr. Henry remains in state custody for purposes of his federal habeas petition. 28 U.S.C. § 2254(a). A parolee "is in the legal custody of the Board until [he] completes the service of his maximum sentence or until the Board recommits [him] as a parole violator." *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 303 (Pa. 2003) (citing 37 Pa. Code § 63.2); *accord Beto v. Barkley*, 706 F. App'x 761, 768 (3d Cir. 2017). If, during the period of his parole, a parolee commits another crime for which he can be imprisoned, the Parole Board may recommit him as a parole violator. 61 Pa. Cons. Stat. § 6138(a)(1). The Parole Board may have the parolee reincarcerated for the remainder of his term. *Id.* § 6138(a)(2); 37 Pa. Code. § 63.3.

A petitioner shall not be deemed to have exhausted the remedies available in the courts of the State if he has the right under the law of the State to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). This requirement is applicable to alleged unconstitutional acts of the parole board. *See DeFoy v. McCullough*, 393 F.3d 439, 442–43 (3d Cir. 2005); *accord Taylor v. Nish*, No. 11-cv-0642, 2013 WL 4781724, at *4 (M.D. Pa. Sept. 5, 2013).

Mr. Henry is seeking federal habeas relief while the state process for his possible parole violation and parole revocation remain pending. Under Pennsylvania law, "[a] parolee may be detained on a Board warrant pending disposition of a criminal charge" so long as "[a] district justice . . . conducted a preliminary hearing and concluded that there is a prima facie case against the parolee." 37 Pa. Code. § 71.3(1)(i). That is what happened here. Mr. Henry was arrested on

4

October 6, 2019, beginning the criminal process for his new set of charges. Dkt. No. CP-51-CR-0001023-2020, at 1. As for his 2004 charges, for which he was on parole, the Court of Common Pleas held hearings shortly after his arrest and a detainer order was issued on October 16, 2019. Dkt. No. CP-51-CR-0805831-2004, at 22.

While the Parole Board issued a detainer order, the issue of whether Mr. Henry violated the terms of his parole remains pending, contingent on the outcome of his 2019 criminal charges. *Id.* at 22–23. This is because the lodging of new criminal charges does not automatically mean that a parolee has violated his parole. Instead, the parolee must be "convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record." 61 Pa. Cons. Stat. § 6138(a)(1). When a parolee is in state custody, the Parole Board must conduct a "[parole] revocation hearing . . . within 120 days from the date the Board received *official verification* of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level." 37 Pa. Code § 71.4(1) (emphasis added). Thus, in Mr. Henry's case, there will be no parole *revocation* order as to his 2004 criminal charges until *after* his 2019 charges are resolved. Mr. Henry is presently scheduled to go to trial on the 2019 charges in September 2022. Dkt. No. CP-51-CR-0001023-2020, at 2.

Mr. Henry is right that a detainer order by the Pennsylvania Parole Board is not an appealable order. A parolee may petition for administrative review of a parole *revocation* order, but not a *detainer* order. 37 Pa. Code 73.1(b)(1); *Kester v. Pa. Bd. of Prob. & Parole*, 609 A.2d 622, 624 (Pa. Commw. Ct. 1992) ("Because the detainer is not a final order, [a] direct challenge to that detainer is not appealable."); *Woodward v. Pa. Bd. of Prob. & Parole*, 582 A.2d 1144, 1146 (Pa. Commw. Ct. 1990) (holding that revocation orders under 37 Pa. Code § 71.4 are final

appealable orders). That does not mean, however, that Mr. Henry has exhausted all available state remedies for purposes of a federal habeas petition.

If the Parole Board issues a revocation order as to his 2004 charges, Mr. Henry may then appeal *that* order. 37 Pa. Code. § 73.1(b). At that time, he must file a petition for administrative review with the Parole Board within 30 days of the mailing date of the Board's determination. 37 Pa. Code § 73.1(a)(1). Once he has completed his administrative appeal, he can then present his claims to the Pennsylvania Commonwealth Court. 42 Pa. Cons. Stat. § 763(a); *Bronson v. Pa. Bd. of Prob. & Parole*, 421 A.2d 1021, 1023 (Pa. 1980). If Mr. Henry remains dissatisfied at that point, he must then file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. 42 Pa. Cons. Stat. § 724(a); *McMahon v. Pa. Bd. of Prob. & Parole*, 470 A.2d 1337 (Pa. 1983).[3] After the Pennsylvania Supreme Court's determination, Mr. Henry will have exhausted all available state remedies. *See Taylor*, 2013 WL 4781724, at *4.

To briefly summarize, Mr. Henry is right that he may not appeal the Parole Board's *detainer* order. Instead, he may appeal the Parole Board's *revocation* order, if it is issued, which will happen after the resolution of his 2019 charges. In other words, the fact that Mr. Henry's state processes are in limbo at the moment does not mean he has exhausted all available state remedies.[4]

---

[3] In May 2000, the Pennsylvania Supreme Court issued an order, "Order No. 218," rendering review from the Pennsylvania Supreme Court "unavailable" for purposes of exhausting state court remedies for federal habeas petitions under 8 U.S.C. § 2254(c). *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (interpreting *In re: Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) ("Order 218")). This means that, for purposes of federal habeas review under § 2254, a person in Pennsylvania custody "need not seek review from the Pennsylvania Supreme Court" in order to have exhausted state remedies and seek federal habeas review. *Id.* While Order 218 applies to decisions coming from the Pennsylvania Court of Common Pleas and the Pennsylvania Superior Court pertaining to conviction and post-conviction matters, Order 218 "contains no comparable reference to routine filings of appeals from Commonwealth Court decisions in matters involving challenges to actions by the Parole Board." *Williams v. Wynder*, 232 F. App'x 177, 181 (3d Cir. 2007). Thus, because Order 218 did *not* relieve certain types of cases from the standard exhaustion requirements, Mr. Henry will be "required to exhaust his available state remedies by filing a petition for allowance of appeal in the Pennsylvania Supreme Court" as to any revocation order from the Parole Board. *Id.* He will have 30 days to do so after the entry of any order by the Pennsylvania Commonwealth Court. Pa. R. App. P. 1113(a).

[4] A petitioner who has not exhausted state remedies may petition for federal habeas relief if "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii).

Thus, the Court agrees with and adopts Judge Rice's R&R on this issue. Mr. Henry's state options are not exhausted and, therefore, the Court denies his federal petition on this ground.

## II. Mr. Henry's Petition Is Meritless

To the extent that Mr. Henry's petition for habeas relief on Eighth Amendment grounds relates to the conditions at the Philadelphia Industrial Correctional Center, his change in circumstances has made his petition moot. Mr. Henry is presently either not incarcerated at the PICC because he is on pretrial release with electronic surveillance or he is incarcerated at the Curran-Fromhold Correctional Facility. In either case, he is no longer incarcerated at the PICC, which formed the basis of his petition. Doc. No. 2, at 1.

Nonetheless, even if (contrary to available information) Mr. Henry is still incarcerated at the PICC, his petition for habeas relief has no merit. The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Amendment's prohibition on cruel and unusual punishment applies to both an inmate's formal sentence and to 'deprivations that were not specifically part of the sentence, but were suffered during imprisonment.'" *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Eighth Amendment, in part, protects people from punishment that constitutes "unnecessary and wanton infliction of pain." *Wilson*, 501 U.S. at 297.

When a prisoner challenges prison conditions he must meet two requirements. First, a prison official violates the Eighth Amendment when "the deprivation alleged [is], objectively

---

"[I]nexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986). Mr. Henry has not alleged that a delay has rendered the state remedy effectively unavailable to him and it is doubtful that he could at this stage. *See, e.g., Lee v. Stickman*, 357 F.3d 338, 343-44 (3d Cir. 2004) (exhaustion excused where petitioner's PCRA petition had been pending before the state courts for almost eight years).

sufficiently serious" and that deprivation "result[s] in the denial of the minimal civilized measures of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). This means, for example, that prison officials must provide inmates with "adequate food, clothing, shelter and medical care." *Id.* at 832. When an inmate challenges prison conditions, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, a prisoner must show that the prison official(s) has a "sufficiently culpable state of mind" meaning one of "deliberate indifference to inmate health or safety." *Id.* at 834 (internal quotation marks omitted). In other words, the "prison official must both know of *and* disregard an excessive risk." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (emphasis added). The mental state requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official *should* have been aware." *Mammana*, 934 F.3d at 373 (emphasis added) (quoting *Woloszyn* 396 F.3d at 321).

Mr. Henry has not asserted anything of the sort here. His petition presents no facts that prison officials were deliberately indifferent to his health. Instead, he argues that he "is suffering from sever[e] asthma and is highly [susceptible] to COVID-19," that "COVID-19 causes an unprecedented public health crisis," and that "the Philadelphia Industrial Correctional Center (PICC) was placed on lockdown due to over 10 inmates testing positive for COVID-19." Doc. No. 2, at 5. Mr. Henry does not, however, suggest that any prison official was indifferent to his asthma or that any prison official was aware of the risk posed by COVID-19 and disregarded it. In fact, his claim that that the PICC was placed on lockdown due to inmates testing positive demonstrates the exact opposite—that prison officials *were* aware of the risk of COVID-19 and *did not* disregard it. Moreover, the Philadelphia Department of Prisons continues to take measures to control the spread of COVID-19 within its facilities. *See, e.g.*, *Philadelphia Department of Prisons Announces*

8

*Plans to Enter Yellow Phase*, City of Philadelphia (June 5, 2020), https://www.phila.gov/2020-06-05-philadelphia-department-of-prisons-announces-plans-to-enter-yellow-phase/ (last visited Apr. 11, 2022); *Philadelphia Department of Prisons Announces Resumption of In-Person Visits*, City of Philadelphia (Mar. 2, 2022), https://www.phila.gov/2022-03-02-philadelphia-department-of-prisons-announces-resumption-of-in-person-visits/ (last visited Apr. 11, 2022).

Plus, even in cases where petitioners have alleged significantly more facts of deliberate indifference concerning a prison's response to COVID-19 than Mr. Henry has here, courts have still rejected habeas petitions as not alleging deliberate indifference sufficient to state an Eighth Amendment claim. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325–29 (3d Cir. 2020);[5] *Olson v. Finely*, No. 21-cv-381, 2021 WL 3077548, at *1 (M.D. Pa. July 21, 2021) (adopting report and recommendation finding no Eighth Amendment violation for deliberate indifference to COVID-19), *aff'd Olson v. Warden FCI Schuylkill*, No. 21-2436, 2022 WL 260060 at *2 (3d Cir. Jan. 27, 2022). Therefore, the Court also denies Mr. Henry's petition as meritless.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Henry's petition for a writ of habeas corpus. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5] The Third Circuit Court of Appeals in *Hope* addressed the situation of pretrial detainees, who are protected by the Due Process Clauses of the Fifth and Fourteenth Amendments rather than the Eighth Amendment, which protects people incarcerated after a conviction. Nevertheless, the Third Circuit Court of Appeals explained that "the substantive due process guarantees afforded [pretrial] detainees . . . are at least as robust as Eighth Amendment protections afforded prisoners." *Hope*, 972 F.3d at 325.